UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARON FOODS, INC., <br> An Illinois Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SARAH MONTIETH, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 13-CV-214-JPG/PMF <br> ) <br> ) <br> ) **Jury Trial Demanded** <br> ) <br> ) <br> ) <br> ) |

# COMPLAINT FOR INJUNCTIVE RELIEF
# AND MONEY DAMAGES

Plaintiff, GARON FOODS, INC., an Illinois Corporation, for its Complaint against defendant SARAH MONTEITH alleges and states:

## NATURE OF THE ACTIONS

1. Garon Foods, Inc. ("Garon") brings this action against its former employee and salesperson Sarah Monteith ("Monteith") as a result of her actual, threatened, and inevitable misappropriation and misuse of Garon's valuable confidential information and trade secrets.

## Parties, Jurisdiction & Venue

2. The Court has jurisdiction over this matter and over the parties pursuant to 28 U.S.C. §1332(a)(1).

3. Plaintiff Garon is an Illinois corporation with its place of business in Williamson County, Illinois.

4082532.1

1

4. Defendant Sarah Monteith is an individual who, on information and belief, is currently a citizen of, and resides in, the State of Wisconsin.

5. The Court has personal jurisdiction over Monteith in that the making of the contract and promises between Garon and Moneith, as explained below, occurred in the State of Illinois. 735 ILCS §5/2-209(a)(7).

6. The amount in controversy exceeds the sum of $75,000.00.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events which give rise to the claims in this Complaint occurred in this District in Williamson County, Illinois.

## COUNT I

### (Breach of Contract)

8. Plaintiff incorporates paragraphs 1 through 7 above herein.

9. Attached hereto as Exhibit A, and incorporated herein, is a "Garon Trade Secrets Confidentiality Agreement" ("Agreement") between Garon and Monteith, entered into between the parties in Williamson County, Illinois on November 14, 2011 for good and valuable consideration.

10. In the Agreement, Monteith agreed that she would perpetually hold Garon's trade secrets confidential, secret, and in an undisclosed manner.

11. In the Agreement, Monteith further agreed not to reveal or allow revelation of Garon's trade secrets, to maintain the information in strict

confidence, and not use such trade secrets for any purpose other than the development of goods and services for Garon.

12. The Agreement identifies specific information that is classified as trade secrets, including customer lists, customer products, customer pricing, data, designs, financial records, formula, packaging, procedures, processes, suppliers, vendors, and other confidential information, all of which information would be highly valuable to Garon's competitors.

13. Monteith agreed that any disclosure or unauthorized use of Garon's trade secrets, both through acts of commission and/or omission, will cause Garon substantial and irreparable harm in the competitive market place that may be difficult to measure.

14. The Agreement specifically provides that the perpetual enforcement of the Agreement survives the severing of any business relationship between Garon and Monteith.

15. Monteith began her employment as a salesperson with Garon on November 28, 2011.

16. All persons hired by Garon, including Monteith, are required to sign a confidentiality agreement in the form shown in Exhibit A as a condition of their employment.

17. All persons who enter Garon's facilities in Williamson County, Illinois are also required to sign a confidentiality agreement before they are allowed to pass through doors that are kept locked.

18. Monteith voluntarily resigned her employment with Garon on February 6, 2013.

19. At the time of her voluntary resignation, Monteith signed a document, attached hereto, and incorporated herein, as Exhibit B, in which she acknowledged her understanding and agreement that after leaving Garon's employment, she would still be perpetually bound by the Agreement and by her non-disclosure obligations.

20. During the course of her employment with Garon, in connection with her role as a salesperson, and in reliance upon her written agreement to keep the information confidential and not use it after she left Garon, Monteith was provided with, and given access to, to various valuable trade secrets and confidential information of Garon, including the identity of Garon's customers which were maintained on a computer program known as Filemaker Pro.

21. Access to the Filemaker Pro computer program was limited to those few Garon employees who had a specific need to know the information regarding Garon customers, including salespersons, accounting and management.

22. The computer program for Garon's computer system is password protected and only those few employees who have a need to know information about Garon's customers had the Filemaker Pro program installed on their specific computer.

23. Monteith was made privy to special confidential information and data about Garon's customers, including customer pricing information, specific product specifications for each customer, such as dice size, color ratio, how the product is manufactured for that customer, specific container requirements for the customer, contact person identity and contact information, and other confidential information.

24. Such information about each of Garon's customers is not known to the public and cannot be ascertained by the public, including Garon's suppliers, who may know the specifications for a particular product, but do not know to which customer a particular product belongs, which information is closely guarded and kept secret by Garon.

25. A customer of Garon's is not told the identity of Garon's other customers, which information is kept secret from them, often at the request of the other customers.

26. On February 19, 2013, Monteith sent an e-mail to a significant customer of Garon advising the customer that she is now an "Independent Sales Representative" for a company that provides product to Garon for distribution to its customers.

27. The e-mail from Montieth to this customer contained a specification sheet for the product purchased by this customer from Garon.

28. Monteith used the confidential information she obtained from Garon to pair the specification sheet with this particular customer, which

pairing could not have been made without the use of this confidential information.

29. Garon purchases a significant portion of the products it sells and distributes to its customers this from product provider, including the customer contacted by Monteith on February 19, 2013.

30. But for her employment with Garon and the confidential information she obtained from Garon during her employment, she would not have known the identity of Garon's customers and particular information about those customers.

31. In Monteith's February 19, 2013 communication to Garon's customer, she advised the customer, *"Good news! [product provider – name deleted] is streamlining operations, offering their products directly to cheese makers rather than operating through a distributor"*, referring to Garon who is the sole distributor of products purchased from product provider to this customer.

32. In Monteith's February 19, 2013 communication to Garon's customer, she represents that she is soliciting business from Garon's customer for the product provider.

33. Such solicitation, using confidential information obtained from Garon, is a breach of the Agreement between Monteith and Garon, in that Monteith used her confidential knowledge of Garon's customer to attempt to divert the customer's business from Garon to the product provider.

34. After learning that Moneith was soliciting the customers of Garon, Garon caused a letter to be sent to Monteith demanding that she cease and desist from violating the Agreement.

35. Garon has since been advised that Monteith is continuing to solicit this customer despite the demand that she cease and desist.

36. Based on the foregoing, it is expected that Monteith will continue to breach the Agreement despite Garon's demand that she cease and desist.

37. Garon has incurred great expense to acquire its customers over many years in the food business, which is a difficult and competitive business with respect to acquiring customers.

38. Garon has expended large amounts of money, time and effort, calling on customers, visiting company offices, marketing and advertising, attending trade shows, working closely with customers on their specific needs and requirements, and engaging in an ongoing collaborative effort to develop particular products for each customer, which products, needs, and requirements are kept confidential and secret by Garon.

39. As a result of this effort, Garon has a near permanent relationship with its customers.

40. The identity of Garon's customers, and particular information about each of these customers, is not generally known by others in this

business and cannot be obtained by reference to industry publications or other public information.

41. Maintaining the secrecy of the identity of its customers and particular information about these customers has great economic value to Garon.

42. The identity of Garon's customers and particular information about those customers is kept secret from Garon's employees at considerable expense, time and effort, except those few employees who have a need to know such information and have signed a confidentiality agreement, like that signed by Monteith, prior to being provide with such confidential information.

43. The identity of Garon's customers and particular information about those customers that is contained on its computer system is kept secret by Garon at considerable expense, time and effort by use of computer passwords and limitation of access of this information to a few employees, such as Monteith, who have a need to know such information and have signed a confidentiality agreement, like that signed by Monteith, prior to being provide with such confidential information.

44. Garon's competitors could benefit and gain a competitive advantage over Garon by using this confidential information to solicit Garon's customers directly, armed with confidential information regarding that customer's specific products, needs, requirements, specifications, and contact person, all of which was obtained by Garon at great expense and effort.

45. In the past Garon's competitors and suppliers have asked Garon to reveal this confidential information, but Garon has refused.

46. The Agreement provides that in the event of breach of the Agreement, the breaching party is liable for all actual attorney fees and costs.

47. Garon would be irreparably harmed by any breach of the Agreement for which there would be no adequate remedy at law. Once confidential information is improperly used or disclosed, its value may be damaged or lost forever and the status quo cannot be restored. It would be extremely difficult, if not impossible, to reasonably calculate all of the profits Garon would lose as a result of that conduct. Absent intervention of this Court, Garon will continue to be irreparably injured in that its valuable trade secrets and confidential information will continue to be in the hands of a competitor and will continue to be used against it in the market place, for which injury it has no adequate remedy at law.

## COUNT II

### (Trade Secret Misappropriation)

48. Garon adopts and incorporates paragraphs 1 through 47 above herein as though fully set forth.

49. Garon's confidential information constitutes "Trade Secrets" as defined in the "Illinois Trade Secrets Act", 765 ILCS §1065/2(d).

50. Monteith misappropriated Garon's trade secrets in that she disclosed and used such information without the express or implied consent of Garon and at the time of disclosure knew that she acquired such trade secrets under circumstances giving rise to a duty to maintain its secrecy or limits its use. 765 ILCS §1065/2(b)(2)(B).

51. Monteith's misappropriation was willful and malicious.

## PRAYER FOR RELIEF

WHEREFORE, Garon prays that this Court grant it the following relief:

A. Preliminary and Permanent Injunction

1. Prohibiting Monteith from using or disclosing or threatening to use or disclose any of Garon's confidential information and/or trade secrets; and

2. Ordering Monteith to return all confidential information and/or trade secrets within her possession, custody, or control within ten (10) days of the entry of this Court's order; and

3. Ordering Monteith to disclose to Garon all individuals or entities to whom she provided or otherwise disclosed any of Garon's confidential information and/or trade secrets at any time and to disclose to Garon the identity of all customers whom she has contacted since leaving Garon's employment.

B. Actual, incidental, consequential and punitive/exemplary damages, in an amount to be proven at trial;

C. Disgorgement of all profits and royalties obtained by Monteith as the result of her actions;

D. Garon's attorneys' fees, expenses and costs;

E. Such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this case other than its request for injunctive relief.

        Respectfully submitted,

        SANDBERG PHOENIX & von GONTARD, P.C.

By: /s/   A. Courtney Cox
    A. Courtney Cox, #6182590
    2015 W. Main, Suite 111
    Carbondale, IL 62901
    618-351-7200
    618-351-7604 (Fax)
    E-mail:  ccox@sandbergphoenix.com

    Attorneys for Plaintiff